954

[No. 91-40756-3.    Division Three.    June 29, 1970.]

ROBERT ENRICH, *Appellant,* v. CURTIS B. BARTON *et al., Respondents.*

*Herbert H. Freise,* for appellant.

*Vaughn Hubbard* (of *Minnick, Hahner & Hubbard*), for respondents.

EVANS, C. J.—Plaintiff Robert Enrich commenced this action to set aside a deed executed by his mother, Daisy Enrich, conveying her purported one-half community interest in certain farmland in Columbia County to plaintiff's sister Madeline Barton and husband. Plaintiff claims ownership of the property subject to a life estate and lease by virtue of the will of his father Chris F. Enrich, and the decree of distribution entered in accordance therewith.

There is substantial evidence to support the following statement of the case (*Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 51, 442 P.2d 950 (1968)).

The property in question is a single farm unit consisting of approximately 243 acres acquired by three separate purchases. On September 30, 1941 plaintiff Robert F. Enrich and his wife Emily acquired 160 acres of farmland in

Columbia County. Plaintiff made the initial downpayment of approximately $1,000 towards the purchase price, intending to farm the land himself. Shortly thereafter, his parents, Chris and Daisy Enrich, who were farming nearby rental property, lost their lease. Rather than engage in farming as he originally intended, plaintiff permitted his parents to farm the newly acquired property and sought nonagricultural employment outside of Columbia County.

The following year plaintiff's parents purchased an adjoining parcel of land consisting of approximately 80 acres. Five years later they acquired a small tract of adjoining school property which had been vacated, taking title in the name of "Robt. Enrich whose wife's name is Emily Enrich." These three tracts comprise the disputed 243-acre farm unit. On March 16, 1948 C. F. Enrich and Daisy Enrich deeded to their son, "Robert F. Enrich, whose wife is Emily Enrich", by gift, the 80-acre parcel purchased in 1942, thus placing title to the entire 243 acres in either the plaintiff or plaintiff and his wife.

At all times subsequent to its acquisition, plaintiff's parents treated the property as their own. They farmed it as they saw fit, made all payments on the purchase price except the downpayment made by Robert on the 160-acre tract, and paid no rent to Robert.

Some time prior to June 1954 plaintiff Robert was involved in an automobile accident in the state of Oregon. His sister, Madeline, a secretary for a local attorney in Columbia County, fearful that the farm property would be reached by execution if judgment arising out of the automobile accident were obtained against plaintiff, advised plaintiff to transfer title in the property to their parents. Plaintiff followed this advice and, on June 14, 1954, he and his wife conveyed to "C. F. Enrich, whose wife is Daisy Enrich", the 243-acre tract in question, reciting it to be by way of gift. This deed was recorded in Book 40 of Deeds, at page 107, Records of Columbia County. Plaintiff testified that at this time both he and his parents considered that he, Robert, owned the property. He testified that he and his

wife deeded the property to his father and not to the community composed of his father and mother because "he always did business with his father." He testified that his parents did not pay anything for the property when it was transferred to them and there was no reason for him and his wife to transfer title to the property except for the lawsuit in Oregon.

On April 25, 1960 Chris F. Enrich executed a will, leaving essentially all of his property in approximately equal shares to his son Robert and daughter Madeline. As to Robert, the will contained the following provision:

> To my son, Robert Enrich, I give, devise and bequeath those certain lands which he recently conveyed to me by deed recorded in Book 40 of Deeds, at page 107, records of Columbia County, Washington.

There was nothing in the will to indicate Chris considered this to be community property or that he was devising only a one-half interest therein. The property was subject to a life estate in his wife and a 10-year lease in favor of his grandson, George Barton, a codefendant herein.

Chris Enrich died on the 25th day of January, 1961 and his will was admitted to probate. Robert Enrich was advised by the attorney for the estate that the property devised by his father in his will would be treated as community property. Thereafter, plaintiff, through his attorney, filed a request for special notice of proceedings in the estate. Plaintiff testified his only concern was that the farm property would ultimately go to him, pursuant to the provision in his father's will. Plaintiff's attorney, upon receipt of a copy of the petition for distribution in his father's estate, requested some assurance of the attorney for the estate that the property would ultimately go to Robert. As a result, a letter was directed to plaintiff's attorney, containing the following:

> We are enclosing a copy of the petition for distribution in the above estate.
>
> . . .
>
> You ask that Bob be given some assurance that the land

that was originally in his name would eventually go to him. It is my understanding that Mrs. Enrich has already given him this assurance.

. . .

> Very truly yours,
> CAHILL & WOOLSON
> By /s/ H. N. Woolson

WNW:mw

I have read the foregoing letter and it correctly expresses by thoughts.

> /s/ *Daisy Enrich*
> Daisy Enrich

Thereafter, a decree of distribution was entered making the following provision with respect to the subject property:

That the following described real estate situated in Columbia County, Washington, be and the same is hereby distributed to Daisy Enrich for and during her natural life and upon her death, the same to go to Robert Enrich, subject however, to the provision of paragraph 8 of decedent's Will; that is, ". . . George Barton, shall, following his graduation from high school, have the right to farm all lands owned by me for a period of 10 years . . ." [Below followed a description of the 243 acres.]

There was nothing in the decree of distribution to indicate only a one-half community interest in said property was being distributed.

On February 18, 1966 Daisy Enrich by deed conveyed to her daughter and son-in-law, Madeline Barton and Curtis Barton, her purported one-half community interest in the 243 acres. Thereafter, plaintiff commenced this action to set aside the deed.

The trial court ruled that the property was acquired by the community efforts of Chris and Daisy Enrich, and that the deed from Robert and Emily Enrich to "C. F. Enrich, whose wife is Daisy Enrich", was a conveyance to the community of Chris and Daisy Enrich. The trial court also ruled that plaintiff's failure to object to the decree of distribution and to the statement that the property was being treated in the probate proceeding as community property,

estopped him from denying that the property was in fact community property. Plaintiff appeals.

Plaintiff assigns error to the findings of fact and conclusions of law determining that the deed of 1954 from Robert F. Enrich and Emily Enrich to "C. F. Enrich, whose wife is Daisy Enrich", was a gift to the marital community composed of Chris and Daisy Enrich, and that the decree of distribution in the estate of Chris F. Enrich disposed of only his one-half community interest in the property, leaving unaffected the one-half community interest of Daisy Enrich.

In arriving at these conclusions the trial court placed great emphasis on the fact that plaintiff invested no funds in the property other than an initial downpayment of approximately $1,000 in the 160-acre tract, and that the property was paid for through the community effort of both Chris and Daisy Enrich. This is immaterial. Regardless of who paid for the property, legal title to all three parcels immediately prior to June 14, 1954 was in plaintiff Robert Enrich or Robert and wife. There is nothing in the record to indicate that Chris and Daisy Enrich claimed ownership of any of the property at this time, including the original 160-acre tract which Robert had acquired in 1941, and which his parents had since farmed. This is supported by their gift of the 80-acre tract to Robert in 1948, and the fact that in acquiring the school property in 1947 they put title in Robert's name. In other words, there is no evidence to suggest that on June 14, 1954 Robert and his wife were not free to treat the property as they chose. On that date, and for the reason above stated, they chose to transfer title to "C. F. Enrich, whose wife is Daisy" by deed which recited it was given in consideration of love and affection by way of gift. No real estate excise tax was paid.

■ The trial court's conclusion that the above property passed to the community of Chris and Daisy Enrich by way of gift was based on RCW 26.16.030, which provides that:

Property not acquired or owned . . . as prescribed in RCW 26.16.010 [defining the separate property of the

husband] and 26.16.020 . . . [defining the separate property of the wife], acquired after marriage by either husband or wife or both, is community property.

and upon the rule that the law favors the existence of community, as opposed to separate property, and will resolve doubts in favor of a community status. The trial court concluded that since the language in the deed did not evidence a clear intent on the part of the grantor to convey the property separately, it was, therefore, community property. We disagree. The language in the deed which recites a gift to "C. F. Enrich, whose wife is Daisy Enrich" clearly indicates an intention on the part of the grantor to make a gift to a married individual apart from his spouse. The language ". . . whose wife is Daisy Enrich" is a term of art, indicating an intention on the part of a grantor to convey to an individual and not to a marital community. We cannot strain the meaning of such language to lead to any other conclusion. RCW 26.16.010 provides:

> Property and pecuniary rights owned by the husband before marriage and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber or devise by will such property without the wife joining in such management, alienation or encumbrance, as fully and to the same effect as though he were unmarried.

■ Although property *acquired by purchase* during the marriage status is presumed to be community property (*In re Estate of Witte,* 21 Wn.2d 112, 150 P.2d 595 (1944)), property *acquired by gift* is the separate property of the donee. RCW 26.16.010, *supra; Merkel v. Merkel,* 39 Wn.2d 102, 234 P.2d 857 (1951); *Jones v. Davis,* 15 Wn.2d 567, 131 P.2d 433 (1942); *Holly St. Land Co. v. Beyer,* 48 Wash. 422, 93 P. 1065 (1908). Clearly, the property in question was property acquired by the husband after marriage, by gift. It was, therefore, the separate property of Chris F. Enrich.

Its status as separate property was established as of the date of acquisition. *Katterhagen v. Meister,* 75 Wash. 112,

134 Pac. 673 [1913]. And the presumption is that its status as such remained unchanged. *In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75 [1922].

*Jones v. Davis,* 15 Wn.2d 567, 131 P.2d 433 (1942).

The trial court held that even if the property was the separate property of Chris Enrich at the time of its conveyance in 1954, plaintiff's failure to object to the decree of distribution, after being told by the attorney for the estate that the property would be treated as community property, estops him from asserting such a claim when, 7 years later, Daisy Enrich executed the deed conveying her purported one-half community interest in the property to her daughter and son-in-law.

In view of our conclusion that the disputed property was the separate property of Chris Enrich, we hold that the provisions in his will and in the decree of distribution set forth above conveyed to Robert the entire property and not a one-half community interest therein. The plain language of both documents so states. Since this result was what plaintiff sought there was no need for him to file an objection to the entry of the decree of distribution, particularly in view of the letter, quoted above, countersigned by plaintiff's mother, assuring plaintiff that the property would ultimately go to him. Under these circumstances plaintiff's failure to object to the entry of the decree of distribution does not now estop him from asserting title to the disputed property.

Judgment reversed and this case is remanded with instructions to enter judgment consistent herewith.

GREEN and MUNSON, JJ., concur.